**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

Thomas Burr,

       Plaintiff,                 Case No. 2:04-cv-786

v.                            JUDGE GRAHAM

Mark Perkins, et al.,

       Defendants.

### OPINION AND ORDER

This matter is before the Court on Defendants', Mark Perkins ("Perkins"), Travis Tharp ("Tharp") and the City of Mount Vernon, Ohio ("Mount Vernon") (collectively "Defendants"), Motion for Summary Judgment (Doc. 30). Plaintiff Thomas Burr ("Burr") seeks to recover damages under: 1) 42 U.S.C. § 1983 for alleged violations of his Fourth Amendment rights and 2) Ohio law for assault, battery, false arrest, false imprisonment, malicious prosecution, intentional infliction of emotional distress, and defamation resulting from his arrest by Mount Vernon police officers Perkins and Tharp during the early morning of May 16, 2004.

In his Complaint, Burr alleged Defendants violated his Fourth, Eighth, and Fourteenth Amendment rights and were liable for those violations under 42 U.S.C. § 1983 (Doc. 1). Burr also alleged that Perkins and Tharp conspired to deny him equal protection of the law under 42 U.S.C. § 1985. Burr claimed Defendants violated his rights under the Constitution of the State of Ohio and committed the following torts: assault, battery, false arrest, false imprisonment, malicious prosecution, intentional infliction of emotional distress, and intentional and/or negligent defamation. Burr sought joint and several compensatory damages, punitive

damages, interest, costs, and fees from Defendants.

On February 3, 2006, this Court dismissed Burr's Eighth and Fourteenth amendment claims, the Section 1985 claim, the Ohio constitutional claim, the negligent defamation claim, all other tort claims against Mount Vernon, and the request for punitive damages against Mount Vernon (Doc. 29). Accordingly, Burr's Fourth Amendment claims against all Defendants and his state law claims, save for the negligent defamation claim, against Perkins and Tharp remain. For the reasons that follow, Defendants' motion is granted in part and denied in part.

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir. 1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction & Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir. 1992)(per curium).

The moving party has the burden of showing that there are no genuine issues of material fact in the case. LaPointe, 8 F.3d at 378. The moving party may meet its burden by showing that the nonmoving party lacks evidence to support an essential element of its case. Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993).

In response, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a

properly supported motion for summary judgment.'" Street v. J. C. Bradford & Co., 886 F.2d 1472, 1476 (6th Cir. 1989) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986)). The Court must view the evidence, all facts, and any inferences that may permissibly be drawn from the facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). See also Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 456 (1992).

In reviewing summary judgment motions, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993)(quoting Anderson, 477 U.S. at 251-52). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S. at 247-48 (emphasis in original); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir. 1989).

Thus, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. See also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994).

Finally, a district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

## I.   <u>Facts of the Case</u>

### A.   <u>Undisputed Facts</u>

The following facts are undisputed by the parties.  Officers Perkins and Tharp, along with other officers, were dispatched to the Follin Avenue Apartments in Mount Vernon, Ohio, following a 911 call.   Around 1:00 a.m. the caller reported a disturbance involving ten to fifteen people at the apartments which may have involved knives or guns.[1]  Tharp was the first to arrive on the scene, and the other officers, including Perkins, arrived shortly thereafter.  When Officers Monroe, Burns, and Marti[2] arrived, they began dealing with the crowd.

Tharp began questioning Jayson Hood ("Hood"), a resident of the Follin Avenue Apartments and a friend of Burr's, because he was "the most disorderly, [and] intoxicated."  (Mot. for Summ. J. Ex. A, Trial Tr., 59, June 24-25, 2004 ("Ex. A").)  When Tharp arrived, people "scattered" from the parking lot.  (<u>Id</u>. at 60.)  Hood wanted to go back to his apartment, but Tharp insisted that he stay to answer questions.   Hood was apparently "defensive" (Doc. 37).

---

[1]

Christina Pearce, a resident of the Follin Avenue Apartments, called 911 to report that she heard a fight break out across the parking lot from her apartment, where there had been a party going on most of the day.  She heard someone say something about knives, so she called the police.  She ultimately made three or four calls, and a friend also called from her house.  Apparently the officers investigated and left the premises.  Once the officers left the premises another man tried to start a fight; Pearce heard someone say something about guns or knives, so she called 911 again.  Burr avers that around 1:00 a.m., during a party hosted by his friend, Jayson Hood, Hood and another resident engaged in a loud argument.

[2]

Officers Burns, Marti, and Monroe are not defendants in this action.

(Affidavit of Thomas Burr ("Burr Aff.") ¶ 11.)

Tharp continued questioning Hood in the parking lot in the vicinity of another officer,[3] when Burr approached the area stating, "hey man, he's [Hood's] cool, he's [Hood's] a good guy, it's cool," or words of similar effect.  Burr was advised to back away from the questioning.  After the instruction to back away from the questioning, Burr and Perkins made contact.  Perkins took Burr to the ground.  Perkins, Tharp, and Monroe handcuffed and arrested Burr after transporting him to the hood of a nearby parked car.  Burr's nose was bleeding.

Burr was charged with, and acquitted of, obstructing official business and resisting arrest under the Mount Vernon Municipal Code.  The parties' versions of the facts as to how Burr was arrested, however, starkly differ.

**B.  Burr's Version of the Arrest**

Burr claims he approached Tharp and Hood because knew Hood had previous negative experiences with police officers and was trying to "help them both deal with each other." (Burr Aff. ¶ 13.)  Burr alleges that Tharp told him to back away from the area, which he tried to do immediately, but accidentally bumped into Perkins.  Burr was "backpedaling" to comply with Tharp's instructions and did not realize Perkins was behind him.  When Burr turned around to see into whom he bumped, he recognized Perkins from a "previous encounter years before." (Id. at ¶ 19.)  Burr then raised his

---

[3]

Burr testified in his deposition that a "second officer" came up to Hood while Tharp was questioning Hood, however, he does not identify Perkins as the second officer.  (Mot. for Summ. J. Ex. B, Deposition of Thomas Burr 63:3-4, Oct. 6, 2005.)

hands in front of him with his palms open and said something like, "I don't want any trouble."

Nevertheless, Burr alleges, Tharp grabbed one of his wrists from behind.  As Burr turned away from Perkins to face Tharp, Perkins grabbed Burr from behind in a bear-hug by his neck, "leg-whipped" him, and the officers together took Burr face down onto the cement with Perkins on top of Burr.  As a result, Burr bloodied his nose and hit his forehead.  While he was on the ground, many officers were on top of him.  One of the officers jerked his arm from underneath him and handcuffed it.

Then the officers picked Burr up horizontally and slammed him onto the front hood of an adjacent car with such force that blood from his nose spattered onto the car.  Next, Burr alleges the officers "applied great force to [his] back, head, and shoulders, forcing the air from my lungs, which caused me to fear suffocation," and that he "gasped for air as [his] blood flowed down the inside of [his] throat," while Perkins put his thumb in Burr's windpipe.  (Burr Aff. ¶¶ 32-33.)

C.   **Defendants' Version of the Arrest**

Defendants maintain that Perkins was assisting Tharp with Hood's questioning.  During the questioning, Burr approached the trio, specifically Perkins--arms rigid, fists clenched, chest-to-chest--and told him Hood was cool and a good guy.  Perkins repeatedly told Burr to back away from the questioning of Hood, but he did not, and instead continued his "barrage."  (Ex. A 13.) Perkins noticed Burr smelled strongly of alcohol, had glassy eyes, and generally appeared to be intoxicated, and that the officers had their "hands full," because at this point there were about twenty

people standing in the parking lot that may have been in the fight to which they were dispatched.  (Id.)

After repeatedly telling Burr to back up, Perkins pushed Burr or "checked" him in the chest to get him to back up and out of the officers' space.  (Id. at 14.)  Burr then came back screaming at Perkins, sticking out his chest and purposefully checked Perkins. Perkins told Burr he was under arrest and ordered him to place his hands on the hood of an adjacent car, which Burr refused to do and instead began to pull away.

Perkins "leg-swept" Burr and placed him on his back on the ground.  Perkins told Burr to roll over, but Burr refused.  Perkins threatened to spray Burr with mace or pepper spray, and Burr still did not comply with the instruction to roll over.  Burr flexed his arms and was kicking at the officers, making it impossible to be handcuffed.  Perkins, Tharp, and Monroe then picked Burr up off of the ground and carried him to a nearby car.  Perkins told Burr to put his hands on the hood of the car, so that the officers could handcuff him.  Burr resisted and refused to do so.  The officers finally handcuffed Burr while he was on the hood of the car. Neither Perkins nor Tharp saw Burr hit his nose or forehead on the concrete or on the car, but both acknowledge that his nose was bleeding after the "scuffle."  (Id. at 19.)

## II.  __Burr's Section 1983 Claims Against Perkins and Tharp__

A careful reading of Burr's Complaint shows he asserts claims against Perkins and Tharp for violations of his Fourth Amendment rights due to: 1) his arrest without probable cause; 2) excessive force used during his arrest; and 3) malicious prosecution.  Each

of these claims will be discussed in turn.[4]

Section 1983 states in pertinent part:

> [e]very person who, under color of any statute, regulation, custom or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983. Accordingly, a plaintiff must show: 1) a person 2) acting under color of law 3) deprived him of his rights secured by the United States Constitution or its laws. Berger v. City of Mayfield Heights, 265 F.3d 399, 405 (6th Cir. 2001).

**A. Qualified Immunity Standard**

Perkins and Tharp assert they are entitled to qualified immunity to the extent Burr is suing them in their individual capacities for Fourth Amendment violations under 42 U.S.C. § 1983. Under the doctrine of qualified immunity:

---

[4]

Though they do not specifically discuss Burr's excessive force or malicious prosecution claims under the Fourth Amendment in their motion, Defendants do state that they are moving for summary judgment on all of Burr's remaining claims. In their Reply to Burr's Memorandum in Opposition to their motion, Defendants argue that Burr asserts that his Fourth Amendment rights were violated only because the officers arrested him without probable cause, and therefore, Perkins and Tharp "need not address any other possible Fourth Amendment violations" (Doc. 41). (Reply Br. 3.)

As this Court noted in its February 3, 2006 Order, and Burr's Complaint states, however, Burr has alleged Fourth Amendment violations for excessive use of force during his arrest and malicious prosecution. The Court will thus address all claims, including Burr's claims of excessive force and malicious prosecution under the Fourth Amendment.

> government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

To defeat a claim of qualified immunity, a plaintiff must show: 1) the facts viewed in the light most favorable to the plaintiff show that a violation of the plaintiff's constitutional rights occurred and, 2) the constitutional right was clearly established. Saucier v. Katz, 533 U.S. 194, 200 (2001). For a right to be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Russo v. City of Cincinnati, 953 F.2d 1036, 1042 (6th Cir. 1992) (citing Anderson v. Creighton, 483 U.S. 635, 639-40 (1987)). The defendant bears the initial burden of demonstrating facts showing that he is entitled to qualified immunity; the burden then shifts to the plaintiff to show that the defendant's "conduct violated a right so clearly established that any official in his position would have clearly understood that he was under an affirmative duty to refrain from such conduct." Gardenhire v. Schubert, 205 F.3d 303, 311 (6th Cir. 2000).

Whether or not a defendant is entitled to qualified immunity is a question of law. Dominque v. Telb, 831 F.2d 673, 677 (6th Cir. 1987). Summary judgment is not appropriate if there is a factual dispute involving an issue on which immunity depends. Poe v. Haydon, 853 F.2d 418, 426 (6th Cir. 1988) (citing Green v. Carlson, 826 F.2d 647, 652 (7th Cir. 1987)).

**B.   Burr's Claim of Arrest without Probable Cause**

Perkins and Tharp assert that they had probable cause to arrest Burr for obstructing official business.  Defendants further argue that even if Perkins and Tharp did not have probable cause to arrest Burr for obstructing official business, they are nevertheless entitled to qualified immunity because it was reasonable for them to believe they had probable cause to arrest him under the circumstances.

"[A]bsent probable cause . . . [an] officer may not arrest an individual." Gardenhire, 205 F.3d at 313 (citing Dietrich v. Burrows, 167 F.3d 1007, 1012 (6th Cir. 1999)).  An arrest made without probable cause violates the Fourth Amendment, and is actionable under Section 1983. Id.  Probable cause exists when an officer has "reasonably trustworthy information . . . sufficient to warrant a prudent man in believing that the defendant had committed or was committing an offense." Greene v. Reeves, 80 F.3d 1101, 1106 (6th Cir. 1996)(citations omitted).  The existence of probable cause "presents a jury question, unless there is only one reasonable determination possible." Radvansky v. City of Olmsted Fall, 395 F.3d 291, 302 (6th Cir. 2005)(citing Gardenhire, 205 F.3d at 315).

With respect to obstructing official business, Ohio Revised Code § 2921.31(A)[5] provides:

_____

[5]

Burr was charged with violating Mount Vernon's municipal code against obstructing official business, Section 525.07, which is identical to the provision against obstructing official business in the Ohio Revised Code, Section 2921.31.

> No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties.

> The parties respective recitation of the facts differ

tremendously.  Whether Perkins and Tharp had probable cause to arrest Burr for obstructing official business rests entirely upon which version of the facts is true.  This Court cannot determine, viewing the facts in the light most favorable to Burr, that Perkins and Tharp had probable cause to arrest Burr for obstructing official business.  While Burr admits that he interrupted Hood's questioning, this interruption, coupled with Burr's immediate attempt to back up and his accidental bump of Perkins may not support a finding of probable cause for obstructing official business.  According to Burr, this conduct was not done with the intent to obstruct, prevent, or delay the questioning of Hood, and would not have impeded or hampered the officers' ability to question Hood.  Therefore, viewing the facts in the light most favorable to Burr, a reasonable juror could find that Perkins and Tharp did not have probable cause to arrest Burr for obstructing official business, and that a constitutional violation occurred.

This Court must next examine whether Burr had a clearly established constitutional right to be free from an arrest without probable cause for obstructing official business, meaning whether a reasonable officer under these circumstances would have known that he did not have probable cause to arrest Burr for obstructing official business.  In determining whether a right is clearly established, courts must look to the "law of the jurisdiction at

11

the time of the occurrence." <u>Ingram v. City of Columbus</u>, 185 F.3d 579, 594 (6th Cir. 1999).

Repeated interruptions or disruptions of an officer's questioning of an individual <u>may</u> provide probable cause for obstructing official business under Oh. Rev. Code 2921.31(A). <u>See</u> <u>City of N. Ridgeville v. Reichbaum</u>, 677 N.E.2d 1245, 1248-49 (Ohio Ct. App. 1996) (shouting, repeated interruptions of investigatory questioning, refusal to leave area despite repeated warnings, and forcing officers to cease initial questioning of suspect were affirmative acts sufficiently supporting conviction for obstructing official business); <u>State of Ohio v. Fort</u>, 2003-Ohio-1075, No. 99 CA 219, 2003 Ohio App. LEXIS 1017, at ¶ 28 (Ohio Ct. App. Mar. 7, 2003)(sufficient evidence presented for obstructing official business conviction where defendant "persisted" in questioning police officer about another individual's traffic stop, repeatedly refused to leave the scene, and caused the questioning officer to be left alone with three suspects).

In <u>Pullin v. City of Canton</u>, 133 F. Supp. 2d 1045 (N.D. Ohio 2001), Dawn Pullin sued Canton Police Sergeant John Dittmore for violations of her Fourth Amendment rights under to 42 U.S.C. § 1983 resulting from her arrest for obstructing official business. Around 5:00 p.m., Dittmore stopped Pullin's friend, Kelly Barksdale, for speeding on Interstate 77. <u>Id</u>. at 1047-48. For numerous reasons, Dittmore arrested Barksdale and was searching the vehicle when Pullin observed the scene while driving on I-77. <u>Id</u>. at 1048. She decided to pull over when she recognized Barksdale. <u>Id</u>. Dittmore claimed Pullin was belligerent, refused to identify herself, and repeatedly ignored his orders to leave the scene. <u>Id</u>

Dittmore arrested Pullin for obstructing official business.  Id.

Pullin claimed that she approached the scene to see if Barksdale needed someone to notify his family about his arrest. Id. at 1048-49.  She claimed Dittmore launched questions and orders at her.  Id. at 1049.  She told Dittmore she did not mean to cause any problems and turned to walk away when Dittmore ran past her and began searching her car and her purse.  Id.  He told another officer to put handcuffs on her and ultimately forced handcuffs on her himself.  Id.

In denying Dittmore's motion for summary judgment based upon qualified immunity, the court noted that Pullin "offer[ed] evidence that Dittmore acted in an objectively unreasonable manner in arresting her for obstructing official business," because Pullin argued that she only approached the scene to see if she could contact Barksdale's family and then began to leave the scene at Dittmore's initial command.  Id. at 1052.  The court concluded that "[u]nder such circumstances, no reasonable officer would conclude that Pullin approached the scene with a 'purpose to prevent, obstruct, or delay' official police business.'"

Under Ohio law at the time of the incident, and assuming Burr's version of the facts to be true, reasonable officers in Perkins's and Tharp's position would not have determined there was probable cause to arrest Burr for obstructing official business. Perkins and Tharp are therefore not entitled to summary judgment on the issue of qualified immunity on Burr's claim for arrest without probable cause in violation of the Fourth Amendment.

**C.  Burr's Excessive Force Claim**

The right to be free from excessive force during an arrest is a constitutional right, conferred under the Fourth Amendment's prohibition against unreasonable seizures. Graham v. Connor, 490 U.S. 386, 393-94 (1989). Under the Fourth Amendment, an officer's use of force is bound by a standard of objective reasonableness. Id.

> Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake . . . . [P]roper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

Id. at 396. (citations omitted). The Sixth Circuit has held that "where factual disputes exist as to [these] considerations, summary judgment is not appropriate." Wilkey v. Argo, 43 Fed. App'x 925, 928 (6th Cir. 2002) (citing Kain v. Nesbitt, 156 F.3d 669, 673 (6th Cir. 1998) ("If plaintiff's version as to the nature and degree of force used is credited . . . a jury question is created as to whether the force used was excessive."). Finally, the most relevant inquiry is whether the force used was objectively reasonable from the perspective of a "reasonable officer at the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396-97. An officer may not continue to use force once a reasonable officer would conclude that force is no longer justified by the circumstances. Phelps v. Coy, 286 F.3d 295, 301 (6th Cir. 2002).

14

Burr claims that Tharp grabbed one of his wrists and Perkins tackled him from behind so that the officers took him to the ground in such a manner that he could not brace his fall.  As a result Burr bloodied his nose and hit his forehead.  Burr claims that the officers then picked him up horizontally and slammed him onto the hood of the car, causing his blood to splatter upon the car.  Burr alleges the officers forced the air out of his lungs, causing him to fear suffocation, while Perkins put his thumb in Burr's windpipe.  Perkins acknowledges he "leg-swept" Burr, and Perkins and Tharp also admit that Burr's nose was bleeding after the encounter.  Perkins and Tharp insist that Burr was resisting and struggling against the arrest and that the force they used to arrest Burr was reasonable under those circumstances.

There is a significant factual dispute as to whether Burr was resisting arrest and whether he posed a danger to the officers or to others at the scene.  Thus, determining the reasonableness of the force Perkins and Tharp used to arrest Burr necessarily requires factual determinations by the jury. Viewing the facts in a light most favorable to Burr, when he held up his hands stating he did not want any trouble, Tharp and Perkins combined forces to take him to the ground violently, and face first.  The officers then allegedly picked him up horizontally and slammed him face first into a parked car and with pressure began forcing the air out of his lungs.  If true, this would be an unreasonable amount of force applied to an individual who was not resisting arrest and did not pose a danger to the officers or bystanders.

Perkins and Tharp are not entitled to summary judgment on the issue of qualified immunity on Burr's excessive force claim in

15

violation of the Fourth Amendment.

### D.   Malicious Prosecution

The Sixth Circuit recognizes "a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment," although the contours of the claim are not well defined.  Thacker v. City of Columbus, 328 F.3d 244, 259 (6th Cir. 2003).  To prevail, plaintiffs must, at a minimum, show that there was no probable cause for their arrest.  Id.

In viewing the facts in a light most favorable to Burr, determining whether or not Perkins and Tharp had probable cause to arrest Burr for obstructing official business requires disputed material issues of fact to first be resolved by a jury, as discussed, supra.  Accordingly, Perkins and Tharp are not entitled to summary judgment on the issue of qualified immunity on Burr's Fourth Amendment malicious prosecution claim.

### III. Burr's State Law Tort Claims Against Perkins and Tharp

### A.   Statutory Immunity

Perkins and Tharp move for summary judgment on Burr's tort claims arguing that as employees of an Ohio political subdivision, they are immune from suit.  Under Ohio Rev. Code § 2744.03(A), employees of political subdivisions cannot be held personally liable for acts committed while carrying out official duties unless an exception to immunity applies.  An exception to immunity exists when the employee's acts were committed with "a malicious purpose, in bad faith, or in a wanton or reckless manner."  Ohio Rev. Code § 2744.03(A)(6); Cook v. Cincinnati, 658 N.E.2d 814, 820 (Ohio Ct. App. 1995).  Burr acknowledges that Perkins and Tharp were carrying

16

out official duties during this incident, however, he maintains that their actions were committed with malice, bad faith, or in a wanton or reckless manner.

Malice is "the willful and intentional design to do injury or the intention or desire to harm another, usually seriously, through conduct which is unlawful or unjustified." Cook, 658 N.E.2d at 821 (citing Jackson v. Butler County. Bd. of Comm'rs., 602 N.E.2d 363 (Ohio Ct. App. 1991)).  Bad faith is "a dishonest purpose, conscious wrongdoing, the breach of a known duty through some ulterior motive or ill will, as in the nature of fraud, or an actual intent to mislead or deceive another." Id.  Wantonness is "the failure to exercise any care whatsoever." Id. (citing Fabrey v. McDonald Police Dept., 639 N.E.2d 31, 35 (Ohio 1994)).  Finally, recklessness occurs when an individual:

> does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent[.]

Thompson v. McNeill, 559 N.E.2d 705, 708 (citing Restatement (Second) of Torts § 500 (1965))(Ohio 1990).

A defendant bears the burden of rasing the immunity defense, while the plaintiff bears the ultimate burden of proving that the employee's conduct falls within an exception to immunity.  Ross v. Trumbull County Child Support Enforcement Agency, No. 2000 T 0025, 2001 Ohio App. LEXIS 495, at ** 17-18 (Ohio Ct. App. Feb. 9, 2001). The Court, however, begins with a presumption of immunity.  Cook, 658 N.E.2d at 821.  As such, Perkins and Tharp are entitled to immunity on Burr's state law tort claims, unless Burr is able to

demonstrate that Perkins's and Tharp's actions fall within an exception.

Determining whether an officer's actions are done with malice, in bad faith, wantonly or recklessly is usually a question for the trier of fact. See Fabrey, 639 N.E.2d at 35 ("the issue of wanton misconduct is normally a jury question"); Potter v. Troy, 604 N.E.2d 828, 837-838 (Ohio Ct. App. 1992) (a genuine issue of material fact existed as to whether city employees acted with malice, in bad faith, or wantonly or recklessly). Summary judgment on statutory immunity may be improper where a genuine issue of material fact exists as to whether an officer had probable cause to arrest an individual, and whether the officer's actions in effectuating the arrest were reckless. See Hicks v. Leffler, 695 N.E.2d 777 (Ohio Ct. App. 1997).

Here, there is a disputed material issue of fact as to whether Perkins and Tharp acted maliciously, in bad faith, or in a wanton or reckless manner as the officers may have lacked probable cause to arrest Burr for obstructing official business. The same is true with regards to the force Perkins and Tharp allegedly used to effectuate Burr's arrest. Accepting Burr's version of the facts as true, Perkins and Tharp may have acted maliciously, in bad faith, or wantonly or recklessly during their encounter with Burr such that immunity under Oh. Rev. Code § 2744.03(A)(6) does not apply. This Court accordingly denies Perkins's and Tharp's motion for summary judgment on Burr's claims of assault, battery, false arrest, and malicious prosecution.

**B.   Intentional Infliction of Emotional Distress**

To state a claim for intentional infliction of emotional

distress, the defendant's conduct must be extreme and outrageous and the emotional distress suffered by the plaintiff must be severe and debilitating.  <u>Yeager v. Local Union 20</u>, 453 N.E.2d 666, 671 (Ohio 1983); <u>Paugh v. Hanks</u>, 451 N.E.2d 759, 765 (Ohio 1983).  A court may determine as a matter of law if the emotional distress suffered by the plaintiff is serious. <u>Id</u>.; <u>Oswald v. Fresh/Mark Sugardale, Inc</u>., No. CA-8906, 1992 Ohio App. LEXIS 5756 (Ohio Ct. App. Nov. 9, 1992).  Severe and debilitating emotional distress may be found "where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case." <u>Paugh</u>, 451 N.E.2d at 765.  "Ohio law has traditionally permitted recovery for negligently inflicted emotional and psychiatric injuries accompanied by contemporaneous physical injury," so when a plaintiff suffers physical injury in addition to psychiatric injury, the latter need not be severe and debilitating to be compensable. <u>Binns v. Fredendall</u>, 513 N.E.2d 278, 279 (1987); <u>Lucijanic v. City of Columbus</u>, No. 2:04-cv-751, 2006 U.S. Dist. LEXIS 19090, at **21-22 (S.D. Ohio April 13, 2006).

Perkins and Tharp specifically argue that Burr has failed to show that the encounter caused him traumatically induced neurosis, psychosis, chronic depression, or phobia as evidence of serious emotional distress, and thus he cannot establish a claim.  However, Burr alleges not only mental distress, but physical injury resulting from his arrest including a nosebleed and a bump to the forehead sufficient to induce his "seeing stars."  (Burr Aff. ¶ 26.)

It is undisputed that Burr endured physical injury in addition to emotional distress; Perkins's and Tharp's argument that Burr

cannot establish "severe and debilitating" emotional distress is moot. Therefore, Perkins's and Tharp's motion for summary judgment on Burr's intentional infliction of emotional distress claim is denied.

### C.   Defamation

The elements of defamation include, "a false and defamatory statement, publication of that false defamatory statement, injury to the plaintiff as a result, and a showing that the defendant acted with the required degree of fault." Guy v. McCartney, 2002-Ohio-3035, No. 00JE7, 2002 Ohio App. LEXIS 3066, at ¶ 31 (Ohio Ct. App. June 3, 2002) P 31, (citing Celebrezze v. Dayton Newspapers, Inc., 535 N.E.2d 755, 759 (1988)). Further, "[a] plaintiff will only prevail on a defamation claim where he shows that the defendant published a false statement concerning him which harmed his reputation." Id. (citing Ferraro v. Phar-Mor, Inc., No. 98 CA 48, 2000 Ohio App. LEXIS 1766 (Ohio Ct. App. April 7, 2000) (citations omitted)).

Burr claims that he has been damaged and defamed by Perkins's and Tharp's "false" and "malicious" statements. Burr avers that Officers Perkins and Tharp, among others, testified against him at his trial. Statements made within the context of judicial proceedings, including the testimony of parties or witnesses, are absolutely privileged, so long as they are relevant to the proceeding. Carlton v. Davisson, 662 N.E.2d 1112, 1122 (Ohio Ct. App. 1995) (citing Willitzer v. McCloud, 453 N.E.2d 693, 695 (1983)) (alleged defamatory statements made during the course of a grand jury proceeding were absolutely immune). Burr has made no allegation, nor has he provided any evidence, that any statements

made at his trial were irrelevant.  In fact, he has not even specified what statements were "false" and "malicious."

Burr does not indicate any other statements Perkins or Tharp made which constituted defamation.  Burr has failed to support his claim.  Perkins and Tharp are thus entitled to summary judgment on Burr's defamation claim and the claim for "intentional" defamation is dismissed.

### D.  False Imprisonment

Under Ohio law, false imprisonment is a claim against a private party, and as such, cannot stand against police officers Perkins and Tharp, acting in their official duties.  Barnett v. City of Columbus, No. 2:04-CV-1113, 2006 U.S. Dist. LEXIS 8726, at *33 (S.D. Ohio Feb. 16, 2006).[6]  Accordingly, Burr's claim of false imprisonment against Perkins and Tharp is dismissed.

## IV.  Burr's Section 1983 Claim Against Mount Vernon

To prove a Section 1983 claim against a municipality, a plaintiff must show that the alleged constitutional violation was caused by a municipal policy or custom.  Monell v. Dept. of Social Servs. of the City of New York, 436 U.S. 658, 694 (1978).  A municipality will not be liable under Section 1983 "for an injury inflicted solely by its employees or agents"; in other words, a municipality such as Mount Vernon may not be found liable under a respondeat superior theory for its employees' Section 1983

---

[6]  An initially privileged detention can become false imprisonment due to "the continuing nature of the tort."  Bennett v. Ohio Dep't of Rehabilitation and Correction, 573 N.E.2d 633, 636 (1991).  While each day in which an individual is confined without privilege constitutes false imprisonment, Burr does not present any facts which evidence the "continuing" nature of his alleged false imprisonment.  See id.

constitutional violation.  <u>Id</u>.

A plaintiff may attempt to prove a municipality's illegal policy or custom by showing any of the following: 1) the municipality's legislative enactments or official agency policies; 2) actions taken by officials with final decision-making authority; 3) a policy of inadequate training or supervision; or 4) a custom of tolerance or acquiescence of federal rights violations.  <u>Thomas v. City of Chattanooga</u>, 398 F.3d 426, 429 (6th Cir. 2005) (citing <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 480 (1986), <u>Stemler v. City of Florence</u>, 126 F.3d 856, 865 (6th Cir. 1997), and <u>Doe v. Claiborne County</u>, 103 F.3d 495, 507 (6th Cir. 1996)).  Burr argues that the lack of a written policy as to the amount of force to be used in an arrest demonstrates Mount Vernon's deliberate indifference to any harm caused by its police.

The Sixth Circuit has explained that to evidence an unwritten policy or practice of condoning the use of excessive force, or an "inaction theory," a plaintiff must show: 1) the existence of a clear and persistent pattern of illegal activity; 2) notice or constructive notice on the part of the defendant; 3) the defendant's tacit approval of the unconstitutional conduct, such that the defendant's deliberate indifference in the failure to act amounts to a policy of inaction; and 4) the defendant's custom was the "moving force" or direct causal link in the constitutional violation.  <u>Thomas</u>, 398 F.3d at 429.

To show deliberate indifference, a plaintiff must evidence previous unconstitutional conduct "demonstrating that the [municipality] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and

22

likely to cause injury." Fisher v. Harden, 398 F.3d 837, 849 (6th
Cir. 2005), citing Stemler v. City of Florence, 126 F.3d 856, 865
(6th Cir. 1997), Berry v. City of Detroit, 25 F.3d 1342, 1354 (6th
Cir. 1994) (citations omitted).

Specifically, Burr maintains that Perkins's and Tharp's
actions were done within the scope of their employment with Mount
Vernon.  He also claims that Mount Vernon "ratified . . . reviewed
and approved" the officers' actions.  Burr claims that Mount Vernon
"proximately caused" the actions of the officers by "certain
customs and policies of [Mount Vernon], including, but not limited
to, failure to adequately train, supervise, and discipline police
officers regarding this type of action."  Burr also argues that
Perkins in particular has a "reputation" for the use of excessive
force, purportedly related to a previous incident where Perkins
allegedly "slammed" down his ticket book in Burr's presence.

Mount Vernon, in fact, submitted its policy on the use of
force (Doc. 41).  (See generally, Defs.' Rep., Ex. B, Affidavit of
Police Captain Michael Merrilees.)  The policy is dated April 23,
1990, and it states in pertinent part:

> The legal authority and justification to use any degree
> of force . . . is contingent upon the concept of
> reasonableness and necessity of force used . . . if
> another alternative to use of force is likely to be
> effective under the particular circumstances, and this
> alternative is not attempted, the use of force is not
> authorized, and [t]he degree of force used must be
> reasonable under the circumstances, i.e., the officer may
> use only enough force to overcome the resistence or
> aggression met.  If the degree of force is greater than
> needed to overcome resistence or aggression, that force
> is not legally authorized.

(Id. at ¶¶ 2-4.)  Additionally, Perkins and Tharp received training

through the Ohio Peace Officer Training Academy and have continued to receive training throughout their careers.  (Defs.' Mot. for Summ. J., Exs. G and H, Affidavits of Mark Perkins and Travis Tharp.)

Burr has failed to present any evidence of a custom or policy which was the "moving force" behind Perkins and Tharp's alleged constitutional violations.  Further, Burr has failed to present evidence of any deliberate indifference by Mount Vernon to its officers alleged unconstitutional conduct. As such, Mount Vernon's motion for summary judgment on Burr's claim of liability for Fourth Amendment violations pursuant to 42 U.S.C. § 1983 is granted, and this claim is dismissed.

**V.   Conclusion**

For the above-stated reasons, this Court GRANTS Mount Vernon's motion for summary judgment on Burr's Section 1983 claim (Doc. 30). Mount Vernon is hereby dismissed from this case.

This Court DENIES Defendants' Perkins's and Tharp's motion for summary judgment on Burr's Fourth Amendment claims and on Burr's state law claims of assault, battery, false arrest, malicious prosecution, and intentional infliction of emotional distress (Doc. 30).  This Court GRANTS Perkins's and Tharp's motion for summary judgment on Burr's state law claims for defamation and false imprisonment and those claims are hereby dismissed (Doc. 30).

Accordingly, Burr's Fourth Amendment claims for arrest without probable cause, use of excessive force, and malicious prosecution pursuant to 42 U.S.C. § 1983 and his state law claims against Perkins and Tharp, save for defamation and false imprisonment, remain for further determination.

24

It is so ORDERED.

                              s/James L. Graham
                              JAMES L. GRAHAM
                              United States District Judge

DATE: July 31, 2006